Argued October 16, reversed and remanded November 25, 1924.

## O. C. FENLASON v. PACIFIC FRUIT PACKAGE CO.

### (230 Pac. 547.)

**Master and Servant—Attorney Fees not Recoverable, in Action for Commissions.**

1. Attorney fees are not recoverable, under Section 6799, Or. L., in action for commissions on sales made.

**Appeal and Error—No exception Necessary to Review Verdict Wrong on Its Face.**

2. No exception is necessary to review a verdict wrong on its face.

**Money Lent—Pleading of Money Sustained by Proof of Advances to Third Person on Request.**

3. Under counterclaim for money advanced to plaintiff, proof that money was advanced to third person at plaintiff's request was not a variance.

---

See 3 C. J., p. 933 (1926 Anno.); 4 C. J., pp. 1016, 1151; 27 C. J., p. 140; 26 Cyc., p. 1065; 27 Cyc., p. 829.

**Frauds, Statute of — Agreement Held Original Undertaking, not Within Statute.**

4. Agreement whereby defendant advanced money at plaintiff's request to third person was an original and not a collateral liability of plaintiff, and hence not within statute.

**Appeal and Error — Erroneous Exclusion of Testimony Held not Cured by Subsequent Admission of Evidence of Same Import.**

5. Where testimony introduced by defendant in support of its counterclaim, and showing plaintiff orally agreed to repay money loaned by defendant to a third person at plaintiff's request, was erroneously excluded as tending to prove contract to answer for default of another, and record failed to show that the court receded from its ruling or cured the error by its instructions, *held*, that the error was not cured by subsequent admission without objection of evidence of same import.

**Appeal and Error — When Supreme Court cannot Determine What Judgment Should have Been Rendered Below, It cannot Correct Judgment.**

6. Where Supreme Court cannot, in view of conflicting testimony, determine what judgment should have been rendered in court below, it cannot correct the verdict and judgment, under Article VII, Section 3c, of the Constitution.

From Multnomah: Walter H. Evans, Judge.

Department 2.

Reversed and Remanded.

For appellant there was a brief and oral arguments by *Mr. Fred M. Bond* and *Mr. E. E. Heckbert.*

For respondent there was a brief over the names of *Mr. C. A. Sheppard* and *Mr. C. O. Fenlason,* with an oral argument by *Mr. Sheppard.*

PIPES, J.—This is an action on a contract for a 5 per cent commission for the sale by the plaintiff of berry crates and boxes, the product of the manufacture of the defendant. The first cause of action alleges that the defendant was engaged in the manufacture, construction and sale of various kinds of berry crates, and that it was desirous of selling them, especially to the Apple Growers' Association at

Hood River, Oregon, and that, on the fifth day of March, 1920, the defendant entered into an agreement with the plaintiff, whereby the defendant employed the plaintiff to sell the said berry crates and boxes to the public, and particularly to the said Apple Growers' Association, in carload lots, f. o. b. Raymond, Washington, where the defendant had its manufacturing plant, for $.30 per standard pint crate, made up and filled with standard deep pint berry boxes, plus $.01 per crate for branding; that defendant promised to pay the plaintiff a commission of 5 per cent on all of the said business for which plaintiff secured orders; that defendant agreed with plaintiff that if plaintiff should sell the said standard pint crates, made up and filled with standard deep pint berry boxes, at any advance price over the price above set out, defendant would pay plaintiff, over, above and separate from the said 5 per cent commission, one half of the said advance. It is alleged that the plaintiff accepted the employment and made a sale of 60,000 standard deep pint crates to the Apple Growers' Association, at the price of $.30¼ per filled crate. It is alleged that the 5 per cent commission amounted to $930 on the said sale, and that the plaintiff was entitled to $75 for one half the advanced price over $.30, which is stated to be $75.

The contract with the Apple Growers' Association, which is marked Exhibit "A" of the complaint, provides that the association had the option to buy an additional 20,000 of said crates on the same terms. Looking at Exhibit "A" we find that the contract with the Apple Growers' Association provides:

" * * That the second party [the association] shall have a right to notify the first party [the defendant] in writing on or before May 5, 1920, that they desire an additional 20,000 crates filled with berry boxes,

and it is understood that if the first party will ship to the second party 20,000 additional crates or any part of 20,000 that may be ordered on or before May 5, 1920, said shipments to be made by the first party to the second party on or before June 1, 1920.''

The complaint alleges that plaintiff has performed all of the conditions by him to be performed, and has demanded of the defendant that he pay plaintiff the sum earned by him, which is alleged to be $1,265. It is further alleged in the complaint that $200 is a reasonable sum for attorney's fees for bringing the action. This contract is denied.

A second cause of action alleges an employment to sell boxes to the Portland Manufacturing Company upon an agreement to pay the plaintiff any amount that plaintiff should demand between the sums of $50 and $100. It is alleged that a sale was made to the Portland Manufacturing Company, and plaintiff demanded for his services the sum of $75 and $10 as attorney's fee for that cause of action, which was alleged to be reasonable.

Except that defendant was engaged in the manufacture of berry boxes, all of the allegations in the second cause of action are denied. The defendant then pleads as a counterclaim that it advanced to the plaintiff $977.44, at plaintiff's request, with a promise to repay the same, which, it is alleged, he has failed to do, and alleges $200 to be a reasonable sum as attorney's fees for defending the action and making the counterclaim, and the defendant asks judgment for those sums.

The reply put in issue the allegation of the counterclaim.

A trial was had on these issues and a verdict rendered by the jury as follows:

"We, the jury, having been first duly and regularly impaneled and sworn to try the above cause well and truly, do hereby find for the plaintiff and against the defendant and assess the damages in the first cause of action at $1465.00 and in the second cause of action at $85.00."

The verdict was received and filed and a judgment rendered thereon for the sums mentioned in the verdict, and for interest thereon at 6 per cent per annum from the first day of July, 1920. From this judgment the defendant appeals.

1, 2. The fourth assignment of error is that the court erred in receiving the verdict, and the argument in support thereof proceeds upon the proposition that there was no evidence to support the verdict in the case. There was no motion for a nonsuit, or for a directed verdict, or for a new trial, and no ruling of the court below upon the question of the sufficiency of the evidence to support the verdict.

There were three other assignments of error, the first of which is that the court erred in not permitting the defendant's witness J. W. Kleeb to testify as outlined in exception No. 1, and that the court erred in striking out the testimony of the said witness as so outlined. That assignment will be noticed further in the opinion. The other two assignments of error will not be considered, as the decision upon the first will be decisive of the case on the counterclaim.

The verdict for $1,465 on the first cause of action either includes the $200 attorney's fee prayed for in the complaint, or it is in excess of the amount prayed for. The prayer of the complaint is for a judgment for $1,265, and for $200. In either case the verdict is wrong on its face.

We can find no law authorizing the allowance of an attorney's fee in cases like this one. We are

referred to Section 6799, Or. L., as authority for this allowance. But that section is part of an act relating to the payment of wages by employers to employees, and cannot be extended to an action for commissions on sales. Besides, the attorney fee there allowed is only to a laborer who has given three days' notice of his intention to quit the employment: *Olsen* v. *Heisen,* 90 Or. 176 (175 Pac. 859).

The vice of the verdict in this respect appearing on its face, it should not have been received. No exception was necessary to raise the question here: *Chrudinsky* v. *Evans,* 85 Or. 548 (167 Pac. 562). The judgment on this verdict is one that should not have been rendered.

The defendant pleaded a counterclaim to the effect following:

"That during the year 1919, said plaintiff was securing certain orders doing some work for the said defendant, and that in said work and services plaintiff induced this defendant to advance and deliver to him certain sums of money, the same being delivered on or before December 31, 1919, and being for the sum of $977.44, which amount said plaintiff promised to return to and repay to said defendant with interest, but that said plaintiff has not paid the same or any part thereof * * ."

This counterclaim was put in issue by the reply. The deposition of J. W. Kleeb, president of the defendant company, was offered. Among other questions, he was asked:

"Q. At the time of the termination of plaintiff's employment, state whether or not any settlement of the plaintiff's account or accounts were had between the plaintiff and defendant.

"A. Yes.

"Q. If you have answered the foregoing inter-rogatory in the affirmative, please state what that settlement was, state fully.

"A. Plaintiff was paid in full for his time and expenses. It was agreed at that time that there was due the sum of $1,946.07 from O. C. Fenlason on account of advancements to International Box Com-pany, for advancements made at Fenlason's re-quest."

To the reading of this answer counsel for respond-ent objected in these words:

"Just a moment. I want to look this over. This is at variance with the pleadings. They say in the cross-complaint here that they advanced and loaned Fenlason $977.44, and they say in that answer pro-pounded there that Fenlason requested them to loan the money to somebody else. That is a different ques-tion to be tried out. I move that be stricken out, not in issue."

In the colloquy between the court and counsel that followed the objection was in substance repeated. In the course of the colloquy the court remarked:

"I believe the objection should be sustained. If it is established it is a contract it would be proving a default of another."

At the end of the colloquy the court sustained the objection to the whole question and allowed an excep-tion.

3. The objection made by counsel was not well taken. Money advanced to the International Box Company at Fenlason's request was advanced to Fenlason. The contract was pleaded according to that legal effect, and the evidence stricken out was not a variance. It could make no difference respecting the liability of the plaintiff whether he or another was to receive the money advanced at his request.

4, 5. Nor does the stricken answer of the witness tend to prove a contract to answer for the default of another. It is not clear from the record whether the remark of the court to that effect was intended to be a ground for the ruling sustaining the objection. Whether so or not, the contract pleaded and supported by the testimony excluded is an original and not a collateral liability, and not within the statute of frauds: *Mackey* v. *Smith,* 21 Or. 598 (28 Pac. 974); *Peterson* v. *Creason,* 47 Or. 69, 71 (81 Pac. 574); 61 Cent. L. J. 303; *Harrison* v. *Birrell,* 58 Or. 410 (115 Pac. 141). Evidence of the same import was afterwards admitted without further objection. But it was not necessary to repeat the objection or the ruling to have the legal effect of taking all the evidence of like import from the jury. Whatever of it got to the hearing of the jurors went along with the ruling which instructed them that this evidence was not for their consideration. The effect was to eliminate the evidence of the counterclaim as a fatal variance and void. What is said here applies equally to the second cause of action. The court erred in sustaining the objection.

Counsel dispute with each other whether the court submitted the counterclaim to the jury. The dispute is futile. The record is the source of our information, and it is silent. The instructions are not a part of it. We cannot say that the court receded from its ruling or cured the error by its instructions.

As this ruling requires a reversal of the judgment below, it is not necessary to notice the other questions presented by appellant's brief.

6. Respondent invites us to correct the verdict and judgment thereon, if we find that they include items that were not proper to be included, and to enter such judgment as ought to have been rendered in the

court below, invoking Article VII, Section 3c, of the Constitution. Before we can exercise the power conferred by that constitutional provision, we must be of the opinion that we can, from the record, determine what judgment should have been rendered in the court below. We are of the opinion that we cannot do so in this case. The evidence is sharply conflicting and we have not the advantage of a jury, in hearing and observing the witnesses—an exceedingly valuable aid in determining the value of the testimony.

The judgment below is reversed and a new trial ordered.                    REVERSED AND REMANDED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.